MATTER OF CARRUBBA

In Visa Petition Proceedings

A-7423207

*Decided by Board December 12, 1966*

In the absence of clear and convincing evidence to establish a 1962 common-law marriage of petitioner in the State of Ohio, where such marriages are valid, petitioner's marriage to beneficiary in 1964 is valid for immigration purposes.

The case comes forward on appeal from the order of the District Director, Cleveland District, dated August 4, 1966 for the reason that the petitioner's marriage to the beneficiary, Alfredo Carrubba, on August 15, 1964 is not valid because she was not then free to marry as she was the legal spouse of George Henry Huff with whom she entered into a common-law marriage on or about November 1962 and continued this relationship for approximately one year; common-law marriages are valid in the State of Ohio; the petitioner has failed to submit evidence that her marriage to Huff has been terminated.

The petitioner, a native born citizen of the United States, 32 years old, female, seeks immediate relative status on behalf of the beneficiary as her husband. The beneficiary is a native and citizen of Italy 42 years old. The parties were married at Cleveland, Ohio on August 15, 1964. The visa petition indicates no prior marriages for the petitioner. The beneficiary had two prior marriages which were terminated by divorce on April 25, 1955 and August 3, 1964 in Cleveland, Ohio.

The visa petition was previously denied by the District Director on February 8, 1966 on the same grounds. However, on June 8, 1966 the District Director realizing that the decision had been entered without the petitioner being advised in writing that the evidence was available for her review and without being afforded an opportunity to rebut it as provided in 8 CFR 103.2(b)(2), withdrew his denial order of February 8, 1966 and reopened the proceedings to permit review of the evidence and record of proceedings by the peti-

tioner and to afford her an opportunity to rebut such evidence and submit any new evidence pertinent to the application.

The Service case for denial of the visa petition rests upon a finding that the petitioner entered into a common-law marriage in Ohio with one George Henry Huff on or about November 1962 and continued this relationship for approximately one year and, inasmuch as this marriage was not legally terminated, her subsequent marriage to the beneficiary is invalid. The record contains a report of investigation dated January 14, 1965. A sworn statement was taken from the petitioner on November 18, 1964. The petitioner testified that she had met Huff at Parma Hospital where they were both employed. The petitioner had had a daughter born out of wedlock. Huff told her he would make a home for her and her daughter and they moved into an apartment with Huff. The petitioner denied any sexual relationship with Huff, claimed he always was drunk and would sleep in bars or on the ground, and after about six months she could not stand it any longer and became hospitalized. Her mother had been taking care of the child until he was placed in a foster home and she was rushed into the hospital and lost contact with Huff. According to the petitioner's testimony, the situation with Huff began in March 1963 and terminated in November 1963. She testified that Huff actually rented the place but that she paid the rent and they had no joint charge accounts, bank accounts or checking accounts. She testified she introduced Huff to her parents as her boyfriend. Although the petitioner testified that she did not introduce Huff as her husband to her landlady, Mary Tytko, investigation disclosed that the eviction notice was served against George and Doris Huff. However, if the petitioner introduced Huff as George, it would be natural for the landlady to assume they were married.

A review of Catholic Charities' files on December 28, 1964 indicated that the petitioner and George Huff told the agency they were married in Angola, Indiana, November 22, 1962, but at a later date, after the parties had separated, she told Catholic Charities that the statement about the marriage was a lie. Marriage records for Angola, Indiana were checked on December 29, 1964 and no record of a marriage between the petitioner and Huff was located. Other evidence contained in the investigation discloses that the petitioner and Huff were listed on some records, such as Catholic Charities' records and payroll records from Parma Hospital, as married.

A sworn statement was taken from George Huff on January 11, 1965. He stated that he and the petitioner had been working together at Parma Hospital, they dated and he had a sex act with her and that he asked her to move in with him at his apartment,

which she did in November 1962. Huff claimed they had a joint charge account at Sears Roebuck, a claim which could not be substantiated by Service investigation. Huff stated that the petitioner represented herself to people as his wife and that she fully understood they were living together as man and wife, that he told people she was his wife and they lived together this way about one year. He further testified that he bought the petitioner an engagement ring and a wedding ring to make the situation look right. Huff testified to four marriages, the first in 1937 and the last in 1951, all of these marriages being terminated by divorce decrees which are part of the record.

The issue, therefore, is whether the evidence regarding the relationship between the petitioner and George Henry Huff amounts to a common-law marriage. Common-law marriages are recognized in the State of Ohio, which is the law applicable to the situation. The petitioner has denied that a common-law marriage was ever intended or entered into, has denied consummation although admitting living together with Huff. Huff has testified that they lived together as man and wife and were so known. At the reopened hearings the petitioner submitted an affidavit of Sophie Klingbeil executed July 14, 1966, her own affidavit executed July 20, 1966 as well as statements of two other persons. The affidavit of Sophie Klingbeil is to the effect that she met the petitioner in the winter of 1962; that the petitioner was brought there by George Huff; that they told them they had gone away to get married; that a month or two later, the petitioner told the affiant and her husband that she was not really married to George and said that they were living together and pretended to be married so they could get her baby back from the Catholic Charities; that about the same time George Huff told them he had felt sorry for her because of her home life and because she wanted her baby back, which is why he pretended to be married to her. George was drinking a lot and fell asleep at the bar. He claimed that the petitioner had no reason to object to his drinking because they were not married and every time he got drunk he said they were pretending to be married because he felt sorry for her. George Huff, who appears to have gotten drunk quite frequently, stated that another reason he was staying with the petitioner was because she was paying for the rent and he was able to take money from her purse to pay for his drinking.

A signed statement by Rosalind Basista is to the effect that she met the petitioner in the fall of 1962 at a dinner and the latter was introduced to her as George Huff's girl friend; that she had heard that the petitioner and George Huff were only pretending to be mar-

ried so she could get her daughter back from Catholic Charities and that the petitioner stated that she did not wish to marry George because he drank too much. The hearsay nature of some of the information contained in the statement of Rosalind Basista is recognized.

The record contains a statement signed by Mary Tytko, the landlady at the premises rented by the petitioner and George Huff, to the effect that she did not know they were married but just knew that they were living in the apartment. She knew Doris wanted to keep her baby and Catholic Charities kept checking on her. The petitioner executed a sworn statement on July 20, 1966 to the effect that the sole purpose in living with George Huff was so that she could regain custody of her daughter, that she could do this only by representing she was married and that she gave her name as Doris Huff solely for this purpose, and that at no time did she ever intend to be presently married to George Huff.

Common-law marriages are valid in Ohio.[1] As a matter of public policy, such marriages are not favored. *In re Speeler*, 6 O.O. 529. The case of *Elter Van Aschen*, 11 O.O. 2d 195, gives a good summary of law relating to common-law marriages in Ohio. The essential requirements for a common-law marriage in Ohio are stated to be: "An agreement of marriage in praesenti when made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they move, establishes a valid marriage at common law."[2] So-called common-law marriages contravene public policy and should not be accorded any favor; indeed, they are quite generally condemned. It is well settled in Ohio that to establish a common-law marriage, all the essential elements of such a relationship must be shown by clear and convincing evidence.[3]

In the case of *Brastein v. Sedivy*, 78 Ohio Law Abstract, 481, it was held in order to establish a common-law marriage, all essential elements to such a relationship must be shown by clear and convincing evidence. Clear and convincing proof has been defined as that degree of proof though not necessarily conclusive, which will produce in the mind of the court a firm belief or conviction, or, as that degree of proof which is more than a preponderance but less than beyond a reasonable doubt. Preponderance in turn, is not determined by the number of witnesses, but by the weight of the evidence

---

[1] *Holmes v. Pere Marquette Ry. Co.*, 28 Ohio App. 297, 162 N.E. 675.

[2] *Umbenhower v. Labus*, 85 Ohio St. 238, 97 N.E. 832.

[3] *In re Estate of Redman*, 135 Ohio St. 554; *Howard v. Central Nat'l Bank*, 21 Ohio App. 74, 152 N.E. 784; *Eagles v. McKee*, 38 N.E. 2d 417.

which is determined by the witnesses' opportunity for knowledge, the information actually possessed and related, and the manner in which the testimony is given.

In the instant case, the evidence as to a common-law marriage falls far short of the standard set forth by the Ohio courts to establish such a marriage—i.e., clear and convincing evidence. At most, the evidence establishes that the petitioner and Huff lived together for about one year and that certain records show them to be man and wife. The record is wholly devoid of any proof that the parties agreed in verba praesenti to become man and wife. The wife has denied cohabitation, or that they were treated and reputed to be husband and wife in the community and the circle in which they moved. Her testimony has been corroborated. Upon a full consideration of the record, it is concluded that the standard of clear and convincing proof of a common law marriage of Huff has not been met in this case. Accordingly, the petitioner's present marriage to the beneficiary is regarded as valid. The appeal will be sustained.

**ORDER:** It is ordered that the appeal be sustained and that the visa petition be approved for immediate relative status.