## MATTER OF BULOS

### In Deportation Proceedings

### A-20798198

*Decided by Board March 26, 1976*

(1) Search at border of respondent's suitcase carried by U.S. citizen friend, where respondent was not present, and seizure therefrom of respondent's Argentine passport, occurring in the course of routine customs border inspection does not exceed the Service's authority under section 287(c) of the Immigration and Nationality Act.

(2) Respondent identified himself and thereafter stood mute with respect to the charges of deportability. Argentine passport was issued to a person with the same name as respondent and contained a photograph resembling him. Said passport did not contain a visa permitting entry into the United States or a stamp indicating inspection and entry. These facts, coupled with respondent's failure to deny the passport was his, constitute clear, convincing, and unequivocal evidence on which to base a finding of alienage and deportability as to respondent under section 241(a)(2) of the Act.

(3) Under 8 CFR 242.17(d), an application for voluntary departure shall not be held to constitute a concession of alienage or deportability in any case in which the respondent does not admit his alienage or deportability. Since respondent's testimony in connection with his application for voluntary departure simply corroborated what had already been established by his passport, and his failure to deny that the passport was his, reliance on that testimony by immigration judge, while erroneous, was not prejudicial.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered without inspection

ON BEHALF OF RESPONDENT:
Austin Fragomen, Esquire
Fried, Fragomen & Del Rey, P.C.
515 Madison Avenue
New York, New York 10022

ON BEHALF OF SERVICE:
George Indelicato
Appellate Trial Attorney

This is an appeal from the November 22, 1974 decision of an immigration judge finding the respondent deportable as charged and directing his deportation to Argentina. The appeal will be dismissed.

After identifying himself by name and stating that he had received a copy of the order to show cause from the Immigration and Naturalization Service, the respondent refused to testify as to his deportability, asserting the privilege against self-incrimination of the Fifth Amend-

ment of the United States Constitution, and putting the Service to its proof of the allegations in the order to show cause. The respondent did testify in support of his application for voluntary departure. The respondent raised several issues and objections during the course of the deportation proceeding and asserts them now on appeal. We shall respond to each in turn.

To prove that the respondent was an alien the Service introduced an Argentine passport bearing his name and a photographic likeness of him. The respondent moved to suppress this evidence as the product of an illegal search. The passport had been seized by immigration officers at the Canadian border from a suitcase which was in the possession of a United States citizen friend and co-worker of the respondent. The respondent asserted in his motion that the Service had exceeded the authority of section 287(c) of the Immigration and Nationality Act when it searched luggage carried by an individual whose United States citizenship was not in question and who therefore was not amendable to exclusion from the United States.

Although the respondent's suitcase was searched and his passport seized, these personal effects were in the possession of his friend, who was crossing the United States-Canadian border, and the respondent himself was not present. The search of the respondent's suitcase was part of a routine customs border inspection, and it was proper procedure for the customs officer to turn the passport, traveling without its owner, over to the officers of the Immigration and Naturalization Service at the border. Furthermore, the respondent's friend made no objection to the search or to the seizure of the passport, and he testified that if he had been told of his right to object, he would nevertheless have consented. Accordingly, we uphold the immigration judge's decision to deny the motion to suppress the evidence obtained as a result of searching the respondent's suitcase at the Canadian border.

When he moved to suppress the Service evidence, the respondent requested that a separate hearing be held on the motion, or, in the alternative, that evidence in connection with the motion not be considered in determining the issue of the respondent's deportability. He cited *Simmons* v. *United States*, 390 U.S. 377 (1968), in support of his motion. In *Simmons* the Supreme Court of the United States held that testimony given by a defendant in criminal proceedings in support of a motion to suppress evidence on Fourth Amendment grounds could not thereafter be admitted against him at a trial on the issue of guilt unless he made no objection. Counsel for the respondent urged that by analogy, evidence in support of a motion to suppress evidence on Fourth Amendment grounds should not thereafter be admitted against a respondent in deportation proceedings on the issues of alienage and deportability.

Although the immigration judge denied this request, it does not appear to us that he determined the respondent's alienage or deportability on the basis of testimony given on the motion to suppress, and in fact, the respondent did not testify on this motion, although he did present as a witness his United States citizen friend who carried his suitcase across the border. Under these circumstances, we do not find it necessary to address the question of whether a separate hearing should be held on a motion to suppress evidence, or whether testimony given by a respondent in support of such a motion should or should not thereafter be admitted over his objection on the issues of alienage and deportability.

Counsel for the respondent moved to terminate the proceedings alleging that the Service had exceeded its authority under section 287(a)(2) of the Act when its officers improperly arrested the respondent without a warrant on November 13, 1974, when they had sufficient information on which to base an arrest warrant as early as November 6, 1974. That was when the respondent's passport was discovered and the respondent's friend was interviewed at the Canadian border. The order to show cause and warrant of arrest were not issued until November 14, 1974.

It is possible that a warrant could have been obtained prior to the respondent's arrest. However, assuming, *arguendo*, that there was a defect in the arrest procedure, it is cured if a resulting deportation order is adequately supported. *Bilokumsky* v. *Tod*, 263 U.S. 149 (1923); *La Franca* v. *INS*, 413 F.2d 686, 689 (C.A. 2, 1969); *Vlissidis* v. *Anadel*, 262 F.2d 398, 400 (C.A. 7, 1959).

Counsel for the respondent argues that the Service failed to sustain its burden to prove alienage and deportability by clear, convincing, and unequivocal evidence, since the finding of alienage and deportability was based on the presumption contained in section 291 of the Act. That section places the burden to show the time, place, and manner of entry into the United States upon the respondent in deportation proceedings, and provides that if that burden is not sustained, the respondent shall be presumed to be in the United States in violation of law. Counsel contends that when the charge is entry without inspection, this statutory provision places "an impermissible burden" upon the respondent when he asserts the Fifth Amendment privilege against self-incrimination, for illegal entry can subject a person to criminal penalties. According to counsel, in such a case the respondent is in a double bind, for if he testifies as to how he entered the United States, he is vulnerable to prosecution for illegal entry, but if he asserts his privilege not to testify, he is vulnerable to prosecution anyway because illegal entry is presumed under section 291. Thus counsel asserts that it is unconstitutional to require a respondent to prove the time, place, and manner of entry under section 291 when the charge is entry without inspection and when

the respondent asserts his Fifth Amendment privilege not to testify.

We lack jurisdiction to pass upon the constitutionality of the statutes we administer. *Matter of Chery and Hassan*, 15 I. & N. Dec. 380 (BIA 1975); *Matter of L—*, 4 I. & N. Dec. 556 (BIA 1951). Moreover, we agree with the immigration judge that the Argentine passport issued to a person with the same name as the respondent and containing a photograph resembling him, and which does not contain a visa permitting entry into the United States or a stamp indicating inspection and entry, coupled with the respondent's presence in the United States and his failure to deny that the passport is his, is clear, convincing, and unequivocal evidence on which to base a finding of alienage and deportability. Therefore, reliance on the section 291 presumption merely provides corroboration of the respondent's alienage and deportability.

The immigration judge based his finding of alienage and deportability partly on the respondent's testimony in support of his application for voluntary departure. Counsel points out that this was improper.

Under 8 CFR 242.17(d) an application for voluntary departure shall not be held to constitute a concession of alienage or deportability in any case in which the respondent does not admit his alienage or deportability. In this case the alien steadfastly refused to testify as to alienage or deportability in the case-in-chief on Fifth Amendment grounds. When he offered to testify concerning voluntary departure, he did not intend to testify as to the manner of his entry into the United States until the immigration judge indicated that there was no possibility that the application would be granted unless such testimony were given (Tr. pp. 25–26). Still, counsel for the respondent stated that the respondent's testimony was to be given "purely for the purposes of our application for voluntary departure." (Tr. p. 26.) The respondent then stated, among other things, that he was a native of Argentina and that he had entered the United States without inspection. The immigration judge relied partly on this testimony in arriving at the conclusion that the respondent was deportable as charged. He should have disregarded this part of the respondent's testimony.

There appears to be a misconception concerning the scope of the testimony of a respondent who is applying for the privilege of voluntary departure. Such testimony is given for the purpose of ascertaining whether the respondent is eligible for, and deserves a grant of, that privilege. To establish eligibility for voluntary departure the respondent need show only that he has been a person of good moral character for at least five years preceding the application, section 244(e), Immigration and Nationality Act, and that he is willing to depart promptly from the United States, 8 CFR 244.1. The testimony of a respondent in connection with his application for the privilege of voluntary departure may or may not touch upon alienage and deportability. In any case, such

testimony must not be used for the purpose of either establishing or confirming his alienage or deportability. Nevertheless, since the respondent's testimony was simply corroborative of what had already been established by his passport and his failure to deny that the passport was his, we are satisfied that the immigration judge's erroneous reliance on that testimony was not prejudicial.

We find the respondent's contention that the immigration judge abused his discretion in denying voluntary departure to be without merit.

In view of the foregoing, we agree with the result of the immigration judge's decision and shall dismiss the appeal.

ORDER: The appeal is dismissed.