# MATTER OF PATEL

## In Visa Petition Proceedings

### A-27714297

*Decided by Board October 25, 1988*

(1) Section 204(a)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1154(a)(2)(A) (Supp. IV 1986), applies retroactively to a spousal second-preference petition which was pending adjudication when the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537, became law.

(2) Section 204(a)(2)(A) of the Act sets forth a presumption of a fraudulent prior marriage in any visa petition in which fewer than 5 years will have elapsed between the time a petitioner acquired lawful permanent resident status based on that prior marriage and the time his visa petition for a subsequent spouse is adjudicated.

(3) In order to rebut the presumption of a fraudulent prior marriage set forth in section 204(a)(2)(A) of the Act, the petitioner has the burden of establishing by clear and convincing evidence that the prior marriage was not entered into for the purpose of evading any provision of the immigration laws.

(4) The clear and convincing standard of proof, which requires more than the preponderance of the evidence standard but less than the beyond a reasonable doubt standard, is that degree of proof, though not necessarily conclusive, which will produce in the mind of the trier of fact a firm belief or conviction.

(5) The evidence submitted by a petitioner in an attempt to rebut the presumption of a fraudulent prior marriage set forth in section 204(a)(2)(A) of the Act should not be presumed to be false or contrived, but rather should receive the same fair and reasonable evaluation as that given to evidence in any other visa petition proceeding.

(6) Although a rapid sequence of events in a case arising under section 204(a)(2)(A) of the Act may suggest a lack of bona fide intent at the time of a petitioner's prior marriage, the sequence of events in the instant case was not so rapid as to indicate unequivocally a lack of bona fide intent, and the petitioner has provided evidence which adequately explains the sequence of events in this case.

ON BEHALF OF PETITIONER:
John William Brent, Esquire
400 Perimeter Center Terrace, N.E.
Suite 195
Atlanta, Georgia 30346

ON BEHALF OF SERVICE:
Terry C. Bird
District Counsel

David B. Hopkins
Acting Appellate Counsel

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

The petitioner appeals from the decision of the district director denying the visa petition filed on behalf of the beneficiary as his spouse under section 203(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(2) (1982). The appeal will be sustained.

The petitioner is a 30-year-old native of Kenya. He acquired lawful permanent resident status in the United States on February 3, 1985, as the spouse of a lawful permanent resident whom he had married on June 23, 1983. The petitioner and his first wife were divorced on November 25, 1985. The beneficiary is a 29-year-old native and citizen of India. The petitioner and the beneficiary were married on March 6, 1986. On June 12, 1986, the petitioner filed a visa petition on behalf of the beneficiary as his spouse.

On February 9, 1987, the district director denied the petition on the ground that the petitioner had failed to comply with section 204(a)(2)(A) of the Act, 8 U.S.C. § 1154(a)(2)(A) (Supp. IV 1986), which requires that the petitioner establish by clear and convincing evidence that his prior marriage was not entered into for the purpose of evading any provision of the immigration laws.

At the time he filed his appeal to the Board, the petitioner also filed a motion to reopen and/or reconsider with the district director. He argued that he had failed to comply with section 204(a)(2)(A) of the Act because that provision did not exist at the time he filed his visa petition. He pointed out that section 204(a)(2)(A) of the Act was not enacted into law until November 10, 1986, with the signing of the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537 ("Amendments"), 5 months after the filing of his visa petition. With his motion, the petitioner attached documentary evidence in an attempt to show that his marriage to his first wife was bona fide.

The first document submitted with the motion is the petitioner's own affidavit. In that affidavit, the petitioner describes how his marriage to his first wife was arranged by their parents, but he notes that they were free to accept or reject the arrangement. He states that he decided to marry his first wife because he fell in love with her and wanted to spend the rest of his life with her. The petitioner avers that they were married on June 23, 1983, in an Indian religious ceremony in Murfreesboro, Tennessee, attended by 700 to 1,000 guests. He states that his family spent about $5,000 for the ceremony but that he does not know how much money was spent by his first wife's parents. The petitioner further advises that he and his first wife were very happy and took trips together to visit relatives in South Carolina, Alabama, and Tennessee. He avers that his first wife eventually filed for divorce because she found it difficult to adjust to life in LaFayette, Georgia, where they

were the only Indian nationals. He explains that because she had lived in India for many more years than he had, her ties to traditional Indian culture were stronger than his. He says that she missed the relatives, friends, and Indian cultural functions she had left behind in Murfreesboro.

The petitioner also submitted an affidavit from his first wife, who avers that she and the petitioner married because they were in love and were planning to spend their lives together. She states that they were married in an Indian religious ceremony in Murfreesboro attended by more than 700 relatives from as far away as Oregon and California, and that the wedding cost their parents over $10,000. She further asserts that she was very happy living with the petitioner at the beginning of their marriage and mentions their trips to visit relatives in nearby states. The petitioner's first wife also advises, however, that she began to miss her family and friends in Murfreesboro. She indicates that she and the petitioner lacked a social life in LaFayette, where they were the only Indian nationals. She says that although they entered into their marriage "in the best of faith," she became depressed about their marriage and filed for divorce on September 18, 1985.

In addition, the petitioner attached an affidavit from the former owner of a LaFayette appliance company who avers that he knows the petitioner and his first wife because he used to service the appliances, plumbing, and heating and air conditioning units at the petitioner's motel in LaFayette. He states that he ate meals with them in their home on six to eight occasions and thought that they had a good, solid marriage, although the petitioner once mentioned to him that his wife did not like life in a small town like LaFayette.

The petitioner further submitted affidavits from a cousin, who describes in detail an interstate trip he took with the petitioner and his first wife and the recreational stops they made while traveling; a life insurance salesman, who avers that he made several business calls on the petitioner and his first wife at their home, discussed life insurance for the petitioner's wife, and ate Indian food they served to him; and two older male relatives of the petitioner, each of whom states that he has known the petitioner since his birth, that he attended the large June 1983 wedding of the petitioner and his first wife, that he entertained the petitioner and his first wife in an overnight visit they made to his home during 1984 and they seemed to have a happy marriage, and that he went to LaFayette in an effort to resolve their marital problems when he heard that they were considering a divorce.

Among the other documents submitted by the petitioner with his motion were an ornate greeting card in a foreign language which refers in English to an event at the Elk's Lodge in Murfreesboro; 15 photographs which show many guests attending a ceremony at an Elk's Lodge featuring a young couple; copies of 3 Christmas cards with inscriptions to the petitioner and his first wife; copies of 1983 and 1984 federal and Georgia joint income tax returns for the petitioner and his first wife which are accompanied by form cover letters from their accountant containing instructions on how to sign and mail the returns; a June 4, 1984, letter to the petitioner and his first wife from the Internal Revenue Service regarding the refund of an overpayment of tax on their 1983 return; and copies of a $5,000 corporate bond and Daily Passport Cash Trust account statements in the names of both the petitioner and his first wife.

Finally, the petitioner submitted copies of the divorce decree terminating his first marriage and the property settlement agreement referenced in the decree. In the divorce decree, the petitioner's first wife is identified as the complainant. The property settlement agreement reflects that she executed a quitclaim deed to all of the petitioner's personal and real property, including the motel property which he and a third party had purchased in March 1982. The agreement further indicates that the petitioner and his first wife conveyed to each other all of their interest in the other's personal property.

In a decision dated March 25, 1987, the district director denied the petitioner's motion to reopen and/or reconsider. He nonetheless proceeded to consider each document submitted by the petitioner individually. He characterized the petitioner's affidavit as "self-serving" and offering no evidence which was not available to the petitioner previously and, citing *Seihoon v. Levy*, 408 F. Supp. 1208 (M.D. La. 1976), asserted that the relatively short period of time between the petitioner's acquisition of lawful permanent resident status and his divorce from his first wife indicated a fraudulent intent. The district director discounted the other affidavits on the various grounds that they contained evidence which was known at the time of the original filing of the visa petition, that they provided no new meaningful evidence, and that the affiants could not attest to the intentions of the petitioner when he entered into his first marriage. In addition, he stated that he was not considering the untranslated document, the unidentified photographs, and the undated copies of Christmas cards. The district director did acknowledge that the copies of the tax returns, the corporate bond, and the financial statements lent credence to the marriage, but he noted that these documents, as well as the divorce decree and the

property settlement agreement, were available to the petitioner at the time of the original filing of his visa petition. The district director further observed that the petitioner had not supplied evidence of any insurance policies, property leases, or bank accounts naming his first wife, and that she had gained nothing upon her divorce from the petitioner. He concluded by finding that the petitioner's evidence failed to sustain his burden of proof.

On appeal, the petitioner contends that he has shown by clear and convincing evidence that his first marriage was bona fide. He maintains that the district director erred in requiring his motion to reopen and/or reconsider to be accompanied only by evidence which was not known at the time he filed his visa petition. He also asserts that the district director's decision reflects a predisposition to deny the petition, overlooking the fact that the Amendments provide for a presumption of fraud which is rebuttable. He claims in this regard that while the district director considers his intent at the time of his marriage to be critical, it is impossible for him to prove that his intent was bona fide when the district director dismisses his affidavit as "self-serving" and refuses to give any weight to the affidavits of his first wife and of people who observed them during their marriage. Finally, the petitioner argues that the 5-year rule of section 204(a)(2)(A) of the Act is unconstitutional because it violates his right of privacy. With his brief on appeal, the petitioner submitted documents in an attempt to cure defects noted by the district director in his decision denying his motion. These documents include an affidavit from one of the petitioner's older male relatives, who states that he has reviewed the photographs submitted with the motion and recognizes them as having been taken at the wedding of the petitioner and his first wife, and a translation of the greeting card submitted with the motion which reveals that it is a wedding invitation for the wedding ceremony of the petitioner and his first wife.

The Immigration and Naturalization Service contends on appeal that the district director's disqualification under 8 C.F.R. § 103.5 (1988) of the new evidence submitted by the petitioner was proper, as all of the materials submitted by the petitioner could have been submitted with his original visa petition. It is further argued that the district director correctly concluded that even if the new evidence had been accepted, it would not have satisfied the petitioner's burden of proof. The Service claims that the petitioner's evidence failed to provide objective proof of marital commitment and asserts that the joint tax returns and acquisitions of bonds and stocks indicated a financial but not necessarily a marital bond. In addition, it is asserted that the district director's reliance on Sei-

*hoon* v. *Levy, supra,* was proper, because the rapid course of events in the instant case, as in *Seihoon,* indicates presumptive fraud.

Section 204(a)(2)(A) of the Act [1] provides as follows:

(2)(A) The Attorney General may not approve a spousal second preference petition filed by an alien who, by virtue of a prior marriage, has been accorded the status of an alien lawfully admitted for permanent residence as the spouse of a citizen of the United States or as the spouse of an alien lawfully admitted for permanent residence, unless—

(i) a period of 5 years has elapsed after the date the alien acquired the status of an alien lawfully admitted for permanent residence, or

(ii) the alien establishes to the satisfaction of the Attorney General by clear and convincing evidence that the prior marriage (on the basis of which the alien obtained the status of an alien lawfully admitted for permanent residence) was not entered into for the purpose of evading any provision of the immigration laws.

In this subparagraph, the term "spousal second preference petition" refers to a petition, seeking preference status under section 203(a)(2), for an alien as a spouse of an alien lawfully admitted for permanent residence.

The initial issue before us is the propriety of retroactive application of section 204(a)(2)(A) of the Act to a spousal second-preference petition which was pending adjudication when the Amendments became law. Generally, a new statute applies to cases pending on the date of its enactment unless manifest injustice would result or there is a statutory directive or legislative history to the contrary. *Bradley* v. *Richmond School Board,* 416 U.S. 696 (1974). In determining whether a retroactive application would cause manifest injustice, three factors must be assessed: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717.

The provision creating section 204(a)(2)(A) of the Act appears in section 2(c) of the Amendments. An examination of section 2 of the Amendments reveals the absence of any statutory directive prohibiting the retroactive application of section 2(c). Section 2 makes no mention whatsoever of an effective date. This omission of an effective date for section 2(c) is significant, as Congress showed its awareness of the retroactivity issue by providing effective dates in the other substantive sections of the Amendments. Sections 3, 4, 5, and 6 of the Amendments all specify that provisions they set forth shall apply prospectively, on or after the date of the enactment of the Amendments. Thus, rather than prohibit retroactive application of section 2(c), the text of the Amendments, by its omission of an effective date for section 2(c) when a prospective effective date

---

[1] This subparagraph was added to section 204 of the Act by section 2(c) of the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537, 3541.

has been prescribed in other sections of the Amendments, in fact gives rise to an inference that Congress intended for section 2(c) to be applied retroactively as well as prospectively. *Cf. Marshall* v. *Gibson's Products, Inc. of Plano,* 584 F.2d 668 (5th Cir. 1978) (stating that because Congress had expressly conferred jurisdiction on district courts in other sections of a statute, the natural inference to be drawn from the omission of any grant of jurisdiction in one particular section of that statute was that no such grant was intended).

Further, the legislative history of the Amendments, which is scanty, does not address the issue of the retroactivity of section 2(c). *See* H.R. Rep. No. 906, 99th Cong., 2d Sess. 8, *reprinted in* 1986 U.S. Code Cong. & Ad. News 5978. Thus, no statutory directive or legislative history exists which indicates that section 204(a)(2)(A) of the Act should not be applied retroactively. Therefore, we must next determine whether retroactive application of section 204(a)(2)(A) of the Act would result in manifest injustice.

In deciding whether manifest injustice would occur, we look first at the nature and identity of the parties. *Bradley* v. *Richmond School Board, supra,* at 717. In this analysis, a distinction is made between routine lawsuits engaged in by private parties, and litigation involving "great national concerns" with litigants who are public entities. *Id.* at 718-19; *LTV Federal Credit Union* v. *UMIC Government Securities, Inc.,* 704 F.2d 199, 203-04 (5th Cir. 1983); *City of Great Falls* v. *United States Dept. of Labor,* 673 F.2d 1065, 1068 (9th Cir. 1982). That a change in the law involves an issue of great national concern is a factor militating in favor of the law's retroactive application. *See Bradley* v. *Richmond School Board, supra,* at 719. Immigration policy is a matter of great national concern. *DeGurules* v. *INS,* 833 F.2d 861, 863 (9th Cir. 1987). Moreover, one of the parties before us is the Federal Government. Thus, an examination of the nature and identity of the parties points towards the retroactive application of section 204(a)(2)(A) of the Act.

The second of the three factors involved in an assessment of whether manifest injustice would occur is the nature of the rights affected by the change in the law. *Bradley* v. *Richmond School Board, supra,* at 720. In describing this factor, the Supreme Court stated that an intervening change in the law should not apply to a pending action where to do so would infringe upon or deprive a person of a right that had matured or become unconditional. *Id.* When the Amendments were enacted into law, the petitioner in the case before us had already petitioned for a second-preference visa for the beneficiary but the petition had not yet been adjudicated. We have held that the approval of a visa petition vests no

rights in the beneficiary of the petition, as approval of a visa petition is but a preliminary step in the visa application process; the beneficiary is not, by mere approval of the petition, entitled to an immigrant visa. *Matter of Ho,* 19 I&N Dec. 582 (BIA 1988). In the case before us, where the petition had not even been adjudicated when the law changed, it is clear that the petitioner had no vested or unconditional right to a visa for the beneficiary. Therefore, the second factor also militates in favor of applying section 204(a)(2)(A) of the Act retroactively.

The third factor to examine in determining whether manifest injustice would occur is the nature of the impact of the change in law upon existing rights and the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard. *Bradley v. Richmond School Board, supra,* at 720. The change in the law in this case does impose a new obligation on the petitioner, *i.e.,* that he meet the evidentiary burden of proving the bona fides of his prior marriage by clear and convincing evidence. Yet the imposition of this new obligation on any petitioner would not ordinarily occur without adequate notice and an opportunity to be heard. In any case where a petition was filed prior to the enactment of section 204(a)(2)(A) of the Act into law, the petition would not be denied on the basis of that section unless the petitioner had been informed of the new law and given the opportunity to comply with its evidentiary requirements. Were we to receive an appeal in a case where a petition had been denied under those circumstances, we would find it appropriate to remand the case to afford the petitioner an opportunity to have evidence regarding his prior marriage considered by the district director in a new decision.[2]

Moreover, the new evidentiary burden is a procedural rather than a substantive change. In a case where a question arises regarding the lawful permanent resident status of a petitioner which affects his right to confer benefits under the immigration laws to other persons, that petitioner may be required to carry his burden of proving that he is entitled to confer benefits. *See Matter of Abdoulin,* 17 I&N Dec. 458 (BIA 1980); *Matter of Abdelhadi,* 15 I&N Dec. 383 (BIA 1975). Thus, even before the enactment of section 204(a)(2)(A) of the Act into law, a district director could have considered the bona fides of a prior marriage if the facts raised a

---

[2] In this regard, we note that we disapprove of the basis used by the district director in his original decision denying the petition, but we have determined that the issues of notice and an opportunity to be heard were essentially mooted in this case by the petitioner's subsequent motion to the district director to reopen and/or reconsider accompanied by evidence about his prior marriage.

question regarding whether a petitioner was entitled to confer benefits based on the lawful permanent resident status acquired through that prior marriage. Here, the district director found that the rapidity with which the petitioner divorced and remarried after receiving lawful permanent resident status based on his first marriage raised a question about whether his first marriage had been entered into in good faith. Had this petition been adjudicated before the enactment of the Amendments, the bona fides of the petitioner's first marriage might still have been an issue. The only difference would have been procedural: before the Amendments, the petitioner would have been required to satisfy his burden of proof by a preponderance of the evidence rather than by clear and convincing evidence as specified by section 204(a)(2)(A) of the Act.

Further, the petitioner's right to petition for a second-preference visa for the beneficiary has only been restricted by section 204(a)(2)(A) of the Act, not eliminated. After a lawful permanent resident has been in lawful permanent resident status for 5 years, he may apply for a second-preference visa for a new spouse without being subject to the requirement that he establish by clear and convincing evidence that his prior marriage was not entered into for the purpose of evading any provision of the immigration laws. The regulations provide that a denial of a second-preference visa petition for failure to meet the clear and convincing evidentiary requirement will be without prejudice to the filing of a new petition once the petitioner has acquired 5 years of lawful permanent residence. 53 Fed. Reg. 30,011, 30,016 (1988) (to be codified at 8 C.F.R. § 204.1(a)(2)(ii)). Thus, even if a petitioner cannot meet the new evidentiary requirement of section 204(a)(2)(A) of the Act, that section still makes provision for the granting of a second-preference visa petition for a new spouse, albeit after a delay of up to 5 years. Therefore, we do not find that the nature of the impact of the change in law upon existing rights is such that manifest injustice would result from its retroactive application.

Based on the foregoing three factors, we conclude that no manifest injustice would result from the retroactive application of section 204(a)(2)(A) of the Act. Accordingly, we will apply that section to the visa petition before us and determine whether the petitioner has met his burden of establishing by clear and convincing evidence that his prior marriage was not entered into for the purpose of evading any provision of the immigration laws.

In visa petition proceedings, the burden is on the petitioner to establish eligibility for the benefit sought. See Matter of Brantigan, 11 I&N Dec. 493 (BIA 1966). The burden on the petitioner in visa petition proceedings is usually that of a preponderance of the evi-

dence. *Matter of Soo Hoo*, 11 I&N Dec. 151 (BIA 1965). Section 204(a)(2)(A) of the Act, however, sets forth a presumption of a fraudulent prior marriage in any visa petition in which fewer than 5 years will have elapsed between the time a petitioner acquired his lawful permanent resident status based on that prior marriage and the time his visa petition for a subsequent spouse is adjudicated.[3] In order to rebut this presumption, the petitioner has the burden of establishing by the standard of clear and convincing evidence that the prior marriage was not entered into for the purpose of evading any provision of the immigration laws.

Clear and convincing evidence is a standard of proof which requires more than the preponderance of the evidence standard applied in most civil cases, but less than the beyond a reasonable doubt standard used in criminal proceedings. *Addington v. Texas*, 441 U.S. 418, 425 (1979). The clear and convincing standard imposes a lower burden than the clear, unequivocal, and convincing standard applied in deportation and denaturalization proceedings because it does not require that the evidence be unequivocal or of such a quality as to dispel all doubt. *Id.* at 432; *United States v. Mastrangelo*, 561 F. Supp. 1114, 1120 (E.D.N.Y. 1983). We have defined clear and convincing evidence as "that degree of proof though not necessarily conclusive, which will produce in the mind of the court a firm belief or conviction, or as that degree of proof which is more than a preponderance but less than beyond a reasonable doubt." *Matter of Carrubba*, 11 I&N Dec. 914, 917 (BIA 1966).

In attempting to show by clear and convincing evidence that his prior marriage was not entered into for the purpose of evading any provision of the immigration laws, a petitioner should submit evidence which includes that considered in any visa petition where the validity of a marital relationship is in issue. The issue of whether a marriage is bona fide has typically arisen in visa petition proceedings in cases of suspected fraudulent or "sham" marriages. Such marriages, entered into for the primary purpose of circumventing the immigration laws, have not been recognized as enabling an alien spouse to obtain immigration benefits. *Matter of McKee*, 17 I&N Dec. 332 (BIA 1980); *see also Lutwak v. United States*, 344 U.S. 604 (1953); *McLat v. Longo*, 412 F. Supp. 1021 (D.V.I. 1976); *Matter of M–*, 8 I&N Dec. 217 (BIA 1958). *See generally Johl v. United States*, 370 F.2d 174 (9th Cir. 1966). The central question in such cases is whether the bride and groom intended to establish a life together at the time they were married. *Bark v.*

---

[3] Section 204(a)(2)(B) of the Act provides an exception to this presumption when the petitioner's prior marriage was terminated by the death of the prior spouse.

*INS*, 511 F.2d 1200 (9th Cir. 1975); *Matter of McKee, supra.* The conduct of the parties after marriage is relevant to their intent at the time of marriage. *Lutwak* v. *United States, supra; Bark* v. *INS, supra.* Evidence to establish intent could take many forms, including, but not limited to, proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts, and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences together. *Matter of Phillis*, 15 I&N Dec. 385 (BIA 1975).

Two significant distinctions exist between the typical sham marriage visa petition case and a case in which section 204(a)(2)(A) of the Act applies, however. The first is that the typical sham marriage visa petition case involves an assessment of the validity of a petitioner's present marriage to his beneficiary, while the inquiry under section 204(a)(2)(A) of the Act is directed exclusively towards marriages which have already been terminated. Thus, in addition to the forms of evidence suggested in *Matter of Phillis, supra,* in a visa petition proceeding under section 204(a)(2)(A) of the Act, evidence regarding such matters as the length of time the petitioner and the prior spouse resided together and the reasons for the termination of their marriage is also relevant. *See* 53 Fed. Reg. 30,011, 30,016 (1988) (to be codified at 8 C.F.R. § 204.1(a)(2)(ii)).

The second evidentiary distinction between the typical sham marriage visa petition case and a case in which section 204(a)(2)(A) of the Act applies is that the burdens of proof differ. The clear and convincing evidence standard in section 204(a)(2)(A) of the Act imposes a greater evidentiary burden on the petitioner than the preponderance of the evidence standard ordinarily applied in visa petition proceedings. As a result, while the petitioner in a case in which section 204(a)(2)(A) of the Act applies may be submitting evidence similar to that considered in a typical sham marriage visa petition case, his evidence must be stronger and more persuasive before his petition may be granted.

Further, it should be pointed out that Congress designed the presumption of fraud in a prior marriage in section 204(a)(2)(A) of the Act to be rebuttable by clear and convincing evidence. In order to have any possibility of rebutting the presumption by that high standard, a petitioner in a case under section 204(a)(2)(A) of the Act must be accorded the same fair and reasonable evaluation of his evidence and factual situation as that given to any petitioner in visa petition proceedings. Simply because there is a statutory presumption that a petitioner's prior marriage was fraudulent, it should not be presumed that the petitioner's evidence is false or

contrived or that any possible adverse inference which may be drawn applies to the sequence of events surrounding the prior marriage. For example, because documents showing joint income tax returns and bank accounts are generally considered to be evidence supportive of a bona fide marital relationship, in the absence of an objective basis in the record for discrediting the evidence, dismissal of such evidence as indicative of a financial but not necessarily a marital commitment, as argued by the Service in the case before us, would be unwarranted.

We turn now to the evidence considered by the district director with regard to the petitioner's prior marriage. This evidence was submitted by the petitioner with his motion to reopen and/or reconsider. The district director denied the motion on the dual grounds that the evidence could have been submitted at the time of the filing of the visa petition and that it failed to show by clear and convincing evidence that the petitioner's prior marriage was not entered into for the purpose of evading any provision of the immigration laws. Although the petitioner appealed from the district director's original decision rather than from the decision on the motion, we note that we disagree with both grounds relied on by the district director in denying the petitioner's motion. First of all, at the time the petitioner filed his petition, section 204(a)(2)(A) of the Act had not yet become law; the petitioner was not then directed by the regulations or the statute to submit evidence with his petition to establish the bona fides of his prior marriage. It was therefore illogical and unreasonable to penalize the petitioner and reject his documents because he failed to submit with his visa petition evidence which was neither requested nor required to be submitted at that time.

Secondly, we have determined that the evidence submitted to the district director with the motion to reopen and/or reconsider is sufficient to establish by clear and convincing evidence that the petitioner's prior marriage was not entered into for the purpose of evading any provision of the immigration laws. The district director emphasized what he characterized as the "rapid sequence of events," in that the period of time between the petitioner's acquisition of lawful permanent resident status and his divorce from his first wife was "relatively short." It is true that a rapid sequence of events by an alien may suggest a lack of bona fide intent, as section 204(a)(2)(A) of the Act implicitly recognizes by requiring proof of a bona fide prior marriage from any petitioner who petitions for a visa for a spouse within 5 years after acquiring lawful permanent resident status based on the prior marriage. Yet what constitutes a "rapid" sequence of events depends on the circumstances of each

case. Some cases do involve such hasty action by the alien that the inference of a lack of bona fide intent is virtually inescapable. *See, e.g., Patel v. Minnix,* 663 F.2d 1042 (11th Cir. 1981) (alien seeking treaty investor status consummated business deal 15 days after entry as nonimmigrant visitor); *Seihoon v. Levy, supra* (alien seeking student status applied to university program 9 days after entry as nonimmigrant visitor). In the case before us, however, the sequence of events was not so rapid as to indicate unequivocally a lack of bona fide intent. The divorce proceeding was initiated by the petitioner's first wife, not by the petitioner, and it did not occur until almost 2 and ½ years after their marriage and over 9 months after the petitioner's acquisition of lawful permanent resident status. Moreover, the petitioner has provided evidence which adequately explains the sequence of events in this case.

The evidence submitted by the petitioner to the district director includes affidavits from relatives and business acquaintances. We find the affidavits to be credible and worthy of considerable weight because they are detailed, internally consistent, and plausible; they include explanations of how the affiants acquired knowledge of the facts set forth; and they are corroborated by historical evidence. These sworn statements by people who attended the elaborate wedding ceremony of the petitioner and his first wife and observed them sharing a residence, visiting relatives together, and entertaining guests in their home, provide objective evidence of the conduct of the petitioner and his first wife which is supportive of their subjective bona fide intent at the time of their marriage. Conduct of the petitioner and his first wife supportive of a bona fide intent is further shown by evidence which documents joint financial dealings, such as their filing of joint state and federal income tax returns and their joint ownership of a Daily Passport Cash Trust account and a $5,000 corporate bond.

In addition, the petitioner submitted affidavits from himself and his first wife which indicate that they originally intended to have a lasting marriage, but that the petitioner's first wife eventually filed for divorce because she had become lonely living apart from her family and friends in a town where there were no other Indian nationals with whom they could socialize. Their account is corroborated by the actions of two of the affiants, relatives of the petitioner who traveled to LaFayette to try to help the couple reconcile. Obviously these relatives would not have made these efforts had they not regarded the marriage as a bona fide relationship worthy of salvaging. Further, unlike the district director, we do not find the failure of the petitioner's first wife to exact any financial advantage in the property settlement to be remarkable, as she was

the one who wanted the divorce, there were no children from the marriage to provide for, and the only asset of considerable value, the motel operated by the petitioner, was purchased by the petitioner before the marriage and constituted the means by which he earned his livelihood.

Therefore, based on the evidence submitted to the district director with the motion to reopen and/or reconsider, we find that the petitioner has met his evidentiary burden under section 204(a)(2)(A) of the Act. Because we have reached our decision in this case without relying on the evidence submitted by the petitioner on appeal, remand to the district director for review of that additional evidence is not necessary. Moreover, we have not addressed the petitioner's allegation that section 204(a)(2)(A) of the Act violates his right to privacy as we do not entertain constitutional challenges to the statutes we administer. *See Matter of Awadh,* 15 I&N Dec. 775 (BIA 1976); *Matter of Bulos,* 15 I&N Dec. 645 (BIA 1976); *Matter of Chery and Hasan,* 15 I&N Dec. 380 (BIA 1975).

Accordingly, the appeal will be sustained and the visa petition will be approved.

**ORDER:** The appeal is sustained and the visa petition is approved.